Remedios A. FLORES, Executrix of the Estate of Jose M. Flores; and Remedios A. Flores, individually, Appellants,

v.

GOVERNMENT OF GUAM, Appellee.

No. 25685.

United States Court of Appeals, Ninth Circuit.

June 7, 1971.

Scott Barrett (argued), of Barrett, Ferenz & Bramhall, Oakland, Cal., for appellants.

William Anderson, Asst. Atty. Gen. (argued), C. E. Morrison, Asst. Atty. Gen., Wm. Anderson, Trapp & Gayle, Agana, Guam, for appellee.

Before KOELSCH, CARTER, and KILKENNY, Circuit Judges.

JAMES M. CARTER, Circuit Judge:

Jose M. Flores and Remedios A. Flores, his wife, filed suit for refunds of income taxes imposed and collected by the Government of Guam [hereafter Guam] for the years 1956 to 1961 inclusive. Jose M. Flores is now deceased and his wife is substituted as his executrix. Appellants appeal from a decision of the district court denying their claims. We reverse.

*Factual Summary*

In their action in the district court, appellants jointly claimed the following refunds:

| | |
|---|---|
| 1956 | $718.51 |
| 1958 | 844.08 |
| 1959 | 761.57 |
| 1960 | 1,207.07 |
| 1961 | 582.01 |

The claim by the wife, Remedios A. Flores, was as follows:

| | |
|---|---|
| 1958 | $658.22 |
| 1959 | 286.62 |
| 1960 | 481.39 |
| 1961 | 186.68 |

The claim of Jose M. Flores was denied by the Internal Revenue Service on the ground that he was a non-resident alien of Guam for the period in issue, 1956 through 1961, and that he was not entitled to itemize his deductions to deduct his expense, to file joint returns, or to be otherwise treated as a citizen of Guam for tax purposes.[1] The IRS based its denial on the applicability of a "mirrored" version of 26 U.S.C. § 932(a) to the income tax laws of Guam.[2]

The parties stipulated the following facts to be true:

"1. Plaintiff, Jose M. Flores, was born in Guam and after serving in the United States Armed Forces became a naturalized citizen of the United States about 1922 in California. Thereafter, he resided in Guam until about 1955 and for the years 1956 through 1961 resided in either California or Hawaii. He resided in Guam for the year 1962.

2. Plaintiff, Remedios A. Flores was born in Guam and was living in Guam in 1950 when the Organic Act became effective. She has since then resided with her husband.

3. It is stipulated that the expenses, deductions and exemptions itemized in plaintiffs' claims are to be allowed or disallowed, based upon plaintiffs' legal status for tax purpose, and if they are

1. Jose Flores was not allowed to take certain deductions on his Guamanian tax return, to claim more than one personal exemption, or to file a joint return because he was considered to be a nonresident alien of Guam for Guamanian tax purposes. This result was based on the "mirroring" of several federal income tax provisions, to wit: (1) 26 U.S.C. § 932 (a), which deals with the federal tax status of citizens of United States possessions (see note 2 *infra*); (2) 26 U.S.C. § 873(a), which limits the deductions that may be taken by a nonresident alien of the United States to those expenses "connected with income which is effectively connected with the conduct of trade or business within the United States;" (3) 26 U.S.C. § 873(b). (3), which limits most nonresident aliens to only one personal exemption; and, (4) 26 U.S.C. § 6013(a) (1), which precludes the filing of a joint federal tax return by nonresident aliens. The concept of "mirroring" is discussed *infra*.

2. Prior to 1966, section 932(a) provided:
"(a) General rule.—Any individual who is a citizen of any possession of the United States (but not otherwise a citizen of the United States) and who is not a resident of the United States

shall be subject to taxation under this subtitle only as to income derived from sources within the United States, and in such case the tax shall be computed and paid in the same manner and subject to the same condition as in the case of other persons who are taxable only as to income derived from such sources."

In 1966, the first sentence of section 932 (a) was amended to read as follows:
"Any individual who is a citizen of any possession of the United States (but not otherwise a citizen of the United States) and who is not a resident of the United States shall be subject to taxation under this subtitle in the same manner and subject to the same conditions as in the case of a nonresident alien individual."

1 U.S.Code Cong. & Adm.News 1966 at p. 1795. This amendment would appear to be for the purpose of clarification rather than substantive change. Both parties have referred to the amended language in asserting their respective positions. Accordingly, we will consider the language of section 932(a), as amended in 1966, as being applicable to the period in issue in this appeal. The "mirroring" aspects will be discussed in note 3 *infra*.

so allowable, they will not be questioned as a matter of fact."

The district court held that § 932(a) of the Internal Revenue Code of 1954 was applicable as an income tax law for Guam and dismissed the action.[3]

Guam concedes that the case must be remanded, because the trial court acknowledged in its order dismissing the action that the wife, Remedios A. Flores, is a citizen of Guam for the purpose of the Guam Territorial Income Tax. Therefore, Guam concedes "that the claims which she advances individually at paragraph 4 of the complaint * * * should be granted."

3. The district court's decision was based largely upon two revenue rulings [Rev. Rul. 8, 1953–1 Cum.Bull. 300; Rev.Rul. 56, 1953–1 Cum.Bull. 303] that were listed with approval by the Department of Interior in an explanatory note sent to the House of Representatives accompanying certain proposed amendments in 1958 to the Guam Organic Act [48 U.S. C. § 1421i]. Revenue Ruling 56, supra, provides that:

"The taxpayer, a citizen of Guam, who is a citizen of the United States only *by virtue of collective naturalization, under the Organic Act of Guam*, 64 Stat. 384, C.B. 1950–2, 214, is a citizen of a possession of the United States for the purpose of *Section 252* of the Internal Revenue Code (of 1939) and is subject to federal income tax only upon income derived from sources within the United States. Such a taxpayer is also subject to income tax imposed by the Government of Guam by reason of the dual system of taxation created by the Organic Act of Guam." (Emphasis supplied).

Section 252 is a predecessor version of the present section 932(a).

The district court, in "mirroring" both section 932(a) and Revenue Ruling 56, concluded that:

"The plaintiff, Jose M. Flores, having been naturalized a citizen of the United States in California sometime in 1922, is, therefore, not a citizen of the United States by virtue of collective naturalization under the Organic Act of Guam, and as such he is not a citizen of Guam for purpose of the Guam territorial income tax. He is subject to the Guam territorial income tax, as a non-resident alien."

The issue on appeal is whether section 932(a) of the Internal Revenue Code of 1954 [26 U.S.C. § 932(a)] is a valid part of the Guamanian territorial income tax laws, or whether it is manifestly inapplicable thereto.

*Discussion*

Prior to 1951, Guam had no income tax and its revenue needs were obtained primarily from direct appropriations from the United States Treasury.[4] The desire to make Guam financially self-sufficient prompted Congress to enact section 31 of the Organic Act of Guam.[5]

4. Before 1951, Guamanians were subject to federal income tax only on income from sources within the United States, and paid no tax whatsoever on income earned in Guam. Wilson v. Kennedy (9 Cir. 1956), 232 F.2d 153.

5. At its enactment in 1950, section 31 of the Organic Act of Guam, 64 Stat. 392 (1950) simply provided:

"The income tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in Guam."

In 1958, section 31 was amended "to clarify and restate section 31 * * * and to ratify assessments and collections of income taxes that have heretofore been made by Guamanian authorities under section 31." [2 U.S.Code Cong. & Adm.News 1958 at p. 3647] Amendment was needed because there had been much litigation over whether section 31 merely subjected the citizenry of Guam to the federal income tax or whether it established a separate taxing entity in and for Guam.

This court had determined that section 31 did establish a separate taxing entity with the necessary authority to assess and collect taxes [Laguana v. Ansell (9 Cir. 1954), 212 F.2d 207]. In 1958, the Congress ratified this determination by adding detailed provisions to section 31 and stating that the amended version expressed its true intention *ab initio*. Section 2 of Public Law 85–688 provided:

"Income taxes heretofore assessed by the authorities of the government of Guam pursuant to, or under color of, section 31 of the Organic Act of Guam [this section], the collection of

Section 31, as amended, provides that the income tax laws of the United States shall be the income tax laws of Guam [48 U.S.C. § 1421i (1964 ed.)]. Section 31(e) states that, in order to obtain a "mirrored effect" [6] between the federal and Guamanian tax laws, the word "Guam" is to be substituted for the words "United States," and other changes in language and nomenclature are to be made, including the omission of inapplicable language, when converting a federal tax provision for use as part of the Guamanian tax laws.

Congress was advised, however, that certain provisions of the federal tax code "must be considered inapplicable in order to carry out the intent of the separate tax." [Interior Department Report, 2 U.S. Code Cong. & Adm. News 1958 at p. 3652]. Accordingly, Congress drafted section 31(d) (1) to provide that the Guam territorial income tax laws shall include only those provisions of the federal income tax code that are "not manifestly inapplicable or incompatible with the intent of this section" [48 U.S.C. § 1421i (d) (1)].

Section 31(d) (1) specifically identified only two provisions of the 1954 Code as being "manifestly inapplicable" to the tax law of Guam: (1) chapter 2 of subtitle A, which discusses the tax on self-employment income; and (2) section 931, which permits the exclusion of income from sources outside the United States from a citizen's taxable gross income. The Senate Report accompanying the 1958 amendments to section 31, however, states that:

> "The specific mention of chapter 2 and section 931 of the 1954 code and of corresponding provisions of the 1939 code from the income tax laws in force in Guam is not intended to exclude other provisions of the 1954 or 1939 codes from the category of provisions which are manifestly inapplicable or incompatible with the intent of Congress in making the income tax laws of the United States applicable in Guam. *Other provisions* of the 1954 and 1939 codes *which are manifestly inapplicable* or incompatible with that intent (*for instance, section 932* of the 1954 code and section 252 of the 1939 code) *are also excluded* even though not specifically singled out for mention."

[2 U.S. Code Cong. & Adm. News 1958 at p. 3649 (emphasis added)].

This excerpt from the legislative history of the 1958 amendments to section 31 is the most authoritative source upon which we can rely in determining the Congressional intent with regard to the specific provision here in issue.[7] The

such taxes, and all acts done to effectuate such assessment and collection are hereby legalized, ratified and confirmed as fully, to all intents and purposes, as if section 1 of this Act [adding subsecs. (b)–(h) of this section] (subsections (b) to (g), inclusive, of which are hereby declared to express the true intendment of said section 31 as it was prior to enactment of this Act) had then been in full force and effect * * *."
[72 Stat. 681 (1958)]. Accordingly, we shall apply the Organic Act as amended in 1958 to the period here in issue (1956–61).

6. The term "mirroring" with regard to the Organic Act was first coined in Sayre & Co. v. Riddell (9 Cir. en banc 1968), 395 F.2d 407, 410.

7. The district court did not mention the Senate report quoted above. As previously noted, the court relied on the "mirroring" of section 932(a) and Revenue Ruling 56. See note 3, *supra.* Upon close examination, we do not believe that the aforementioned authorities support the court's conclusion that Jose Flores must be considered an "alien" for Guamanian tax purposes.

For the purpose of analysis, we will *assume* that section 932(a) and its related revenue rulings are an applicable part of the Guam tax law. Revenue Ruling 56 provides that Guamanians who became naturalized United States citizens *collectively* under the Organic Act (1950) and are not residents of the United States, shall be taxed by the United States as "non-resident aliens." The obvious purpose for this ruling was to "reconvey" to Guam its former citizenry, who had become naturalized citizens of the United States under the Organic Act, to serve as the tax base

Senate Report specifically states that section 932 is to be excluded from the tax laws of Guam. Therefore, we do not reach the difficult task of determining what modifications of section 932 would result in the requisite "mirrored effect" because the section is simply not a part of the tax law of Guam.

■ It is important to note that we do not decide how the Government of Guam should classify Jose Flores for purposes of assessing the Guamanian income tax. Guam presumably could classify and tax Mr. Flores as an alien because he was naturalized as a U. S. citizen individually, rather than collectively, provided that this classification is a reasonable one.[8] Such a provision must be the product of Guamanian legislation or administrative rulemaking.

---

for the new Guam territorial income tax laws. As "aliens" of the United States, these persons would be subject to taxation by the United States only on income earned within the United States. [26 U.S.C. § 872]. Guam could then tax such persons as "citizens" on *all* income from whatever source derived, giving a credit for taxes paid to the United States on income earned therein ["mirroring" 26 U.S.C. §§ 61(a) and 901].

The district court's "mirrored" version of section 932(a) incorporated the substance of Revenue Ruling 56. The court, in effect, concluded that Ruling 56 determined that, *only* Guamanians who became naturalized United States citizens *collectively* were to be considered "aliens" of the United States for federal tax purposes. The "mirrored" version of Ruling 56, by the district court's construction, concluded that *only* Guamanians who became naturalized United States citizens *collectively* would be deemed "citizens" of Guam. Neither conclusion is justified.

In this regard, it is critical to observe that Revenue Ruling 56 does *not* determine how Guamanians who became naturalized citizens of the United States *individually* are to be taxed by the United States. Any inference here is impermissible because the scope of the conclusions of a revenue ruling is based upon and restricted to the "entire state of facts involved" [1970-1 Cum.Bull. xiii]. Revenue Ruling 56 described the taxpayer as a "citizen of the United States only by virtue of collective naturalization under the Organic Act of Guam" and, therefore, its conclusions are limited to that factual situation. Any inference or extrapolation from Revenue Ruling 56 with regard to how *individually* naturalized Guamanians are to be taxed by the United States is improper. It is, *a fortiori*, improper to "mirror" such an inference in order to determine how Guam should tax *individually* naturalized persons.

8. Guam is undoubtedly entitled to great flexibility in fashioning classifications for the purpose of taxation so long as such classifications do not violate equal protection of the law. The question in the instant classification would be: Is there a valid public interest or governmental policy related to taxation that justifies the classification of Guamanian's *collectively* naturalized as United States citizens as "citizens" of Guam, but Guamanian's *individually* naturalized as United States citizens as "aliens" of Guam for the purpose of the Guamanian income tax. The Supreme Court has articulated the following standards:

"The State must proceed upon a rational basis and may not resort to a classification that is palpably arbitrary. The rule often has been stated to be that the classification 'must rest upon some ground of difference having a fair and substantial relation to the object of the legislation.' Royster Guano Co. v. Virginia, 253 U.S. 412, 415, [40 S.Ct. 560, 64 L.Ed. 989] ; Louisville Gas & Electric Co. v. Coleman, 277 U.S. 32, 37, [48 S.Ct. 423, 72 L.Ed. 770] ; Airway Electric Appliance Corp. v. Day, 266 U.S. 71, 85, [45 S.Ct. 12, 69 L.Ed. 169] ; Schlesinger v. Wisconsin, 270 U.S. 230, 240, [46 S.Ct. 260, 70 L.Ed. 557] ; Ohio Oil Co. v. Conway, 281 U.S. 146, 160, [50 S.Ct. 310, 74 L.Ed. 775]. 'If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law.' Brown-Forman Co. v. Kentucky, 217 U.S. 563, 573, [30 S.Ct. 578, 54 L.Ed. 883]. State Board of Tax Com'rs v. Jackson, 283 U.S. 527, 537, [51 S.Ct. 540, 75 L.Ed. 1248]. That a statute may discriminate in favor of a certain class does not render it arbitrary if the discrimination is founded upon a reasonable distinction, or difference in state policy. American Sugar Ref. Co. v. Louisiana, 179 U.S.

At this point, however, the Guamanian Government has denied Jose Flores the benefit of certain deductions and filing privileges, which has resulted in additional tax liability, based upon the mistaken belief that a "mirrored" version of section 932 is applicable and controlling. Similarly, the district court's reliance on section 932, in "mirrored" form, as being part of the Guamanian tax law was erroneous and resulted in its denial of Flores' claims.

The judgment of the district court is reversed, and the cause is remanded to that court for further proceedings not inconsistent with this decision.

89, [21 S.Ct. 43, 45 L.Ed. 102]; Stebbins v. Riley, 268 U.S. 137, 142, [45 S.Ct. 424, 69 L.Ed. 884]." Allied Stores of Ohio, Inc. v. Bowers, 358 U.S. 522, 527–528, 79 S.Ct. 437, 441, 3 L.Ed.2d 480 (1959). Although we do not reach the issue here, we feel com-

———◆———

pelled to mention that we are unable to hypothesize a rational basis for distinguishing between collectively naturalized and individually naturalized Guamanians for purposes of the Guam income tax.